UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-cv-62479-SCOLA

PAUL MEYER,

    Plaintiff,

v.

HEALTH MANAGEMENT
ASSOCIATES, INC. et al.,

    Defendants.
_____/

## ORDER ON MOTION TO REMAND

THIS MATTER is before the Court on the Motion for Remand and Request for Award of Attorney's Fees and Costs [ECF No. 7], filed by Plaintiff Paul Meyer. The Court has carefully considered the arguments set forth in the Motion, the Response [ECF No. 16], and the Reply [ECF No. 23], as well as the pertinent legal authorities. For the reasons that follow, the Motion will be granted in part. This case shall be remanded to state court; however, the Court will not award fees and costs to Meyer's counsel.

## Background

### I.   The Complaint

On October 19, 2011, Plaintiff Paul Meyer filed this lawsuit in state court, alleging a single state law cause of action for retaliatory discharge under Florida's Whistleblower Act, Florida Statutes section 448.102. In the Amended Complaint, filed on November 16, 2011, Meyer alleges he was unlawfully discharged from his role as a compliance officer after he uncovered and internally reported widespread Medicare fraud at certain hospitals operated by Defendants Health Management Associates, Inc. and Hospital Management Services of Florida, Inc. (collectively, "HMA"). *See* Am. Compl. ¶ 17 [ECF No. 1-1].

The Amended Complaint alleges that Medicare law requires hospitals to disclose all known errors and omissions in claims for Medicare reimbursement and that failure to do so is a violation of law, citing 42 U.S.C. § 1320a-7b(a)(3). Meyer, a retired FBI agent, became HMA's director of corporate compliance in January 2010. In that capacity, he visited various hospitals

for the purpose of investigating and monitoring compliance with applicable law, including the law governing reimbursement to hospitals under Medicare. During his visits, Meyer allegedly discovered fraudulent Medicare billing at four HMA facilities relating to the improper admission of certain patients. Upon discovery, he internally reported these alleged violations to his superiors at HMA. In August 2010, however, Meyer determined that "no meaningful action" had been taken by HMA to rectify the alleged fraudulent billing practices he had identified. Am. Compl. ¶ 17. This prompted Meyer to send to his superiors detailed memoranda outlining the Medicare violations at the four HMA hospitals.

In response to Meyer's written memoranda, HMA allegedly took immediate steps to change his job duties and to remove him from overseeing compliance at the four facilities in question. Thereafter, in January 2011, HMA allegedly changed Meyer's responsibilities altogether, eliminating his compliance audit duties and stonewalling him from any information on an investigation into the supposedly fraudulent activities he had discovered and reported.

Nevertheless, Meyer continued to inquire as to whether HMA had complied with its obligations to disclose the alleged violations pursuant to applicable law. HMA did not provide him with any substantive information in response to these inquiries, however. Concerned with what he perceived to be HMA's lack of appropriate action, Meyer "continually demanded to know" whether HMA had taken action upon his disclosures and, if so, what sort of action. He made clear that if HMA had not properly reported its violations, Meyer himself would disclose the company's allegedly unlawful activities and policies to the appropriate governmental authorities. On September 6, 2011, Meyer claims he was fired in response to his ultimatum.

## II. Removal to Federal Court

On November 18, 2011, HMA removed this lawsuit to federal court on the basis of federal question jurisdiction under 28 U.S.C. § 1331. The Notice of Removal [ECF No. 1] asserts that "the Amended complaint establishes federal question jurisdiction because Plaintiff's Whistleblower claim, as pled, necessarily raises substantive and disputed issues of federal law, which a federal court can entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities," citing *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005). *See* Not. Rem. ¶ 8.

HMA contends that "*Grable* requires that the federal issue be actually disputed and substantial," and that "[t]hese requirements are met here, as this case 'implicates the complex

reimbursement schemes created by Medicare law' and will require a determination of whether HMA complied with its reporting obligations under Medicare." *See id.* ¶ 14. According to HMA, a substantial and disputed issue of federal law is implicated by this lawsuit because Meyer will have to establish that HMA actually violated the Medicare laws.[1] Thus, HMA argues, federal question jurisdiction exists under the authority of *Grable & Sons*.

### III. Motion to Remand

On December 2, 2011, Meyer filed the instant Motion to Remand, claiming that this action was improperly removed to federal court. Meyer points out that he does not seek relief under any federal statute and that no diversity jurisdiction exists here. He further asserts that this case does not qualify for federal jurisdiction pursuant to *Grable & Sons* because it does not concern a pure issue of federal law, it does not involve any federal actors, and the underlying determination of whether any violation occurred is fact-bound and situation-specific. Therefore, according to Meyer, the actual and disputed federal issue in this case – that is, whether HMA violated the Medicare laws through the improper admission of certain patients and failure to report same – is not, as *Grable & Sons* requires, "substantial."

In addition, Meyer maintains that the exercise of federal jurisdiction in this matter would upset the congressionally-approved balance of responsibilities between the state and federal judiciaries, as it would expand federal question jurisdiction to include any and every case in which a state law whistleblower plaintiff accused his employer of violating some aspect of federal law. According to Meyer, this would result in a drastic and unintended expansion of the narrow rule established in *Grable & Sons*.

### Legal Standard

"It is axiomatic that the jurisdiction of the federal courts is limited, with its scope defined by the Constitution and by statute." *See B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 548 (5th Cir. 1981). "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case[.]" *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001).

---

[1] As discussed *infra*, Meyer will have to prove that he objected to, or threatened to disclose, conduct amounting to an ***actual*** violation of 1aw in order to establish that he engaged in statutorily protected activity, which is an essential element of his state law whistleblower claim. *See Paulet v. Farlie, Turner & Co., LLC*, 2010 WL 2232662, at *2 (S.D. Fla. June 2, 2010).

"On a motion to remand, the removing party bears the burden of showing the existence of federal subject matter jurisdiction." *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343 (11th Cir. 2009). Removal jurisdiction exists only if the federal district court could have exercised original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). To meet its burden, the removing party must prove, by a preponderance of the evidence, the facts supporting federal jurisdiction. *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002).

"Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999). "Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." *Id.* This rule exists for a reason. "Where a federal court proceeds in a matter without first establishing that the dispute is within the province of controversies assigned to it by the Constitution and statute, the federal tribunal poaches upon the territory of a coordinate judicial system, and its decisions, opinions, and orders are of no effect." *Miller Brewing*, 663 F.2d at 548; *see also Am. Tobacco*, 168 F.3d at 411 ("A presumption in favor of remand is necessary because if a federal court reaches the merits of a pending motion in a removed case where subject matter jurisdiction may be lacking it deprives a state court of its right under the Constitution to resolve controversies in its own courts."). Accordingly, "the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits." *Miller Brewing*, 663 F.2d at 548-49.

## Legal Analysis

The Court finds that this case does not present a federal question within the narrow rule of *Grable & Sons*. Therefore, the portion of Meyer's Motion requesting remand will be granted. The Court does not find HMA's attempt at removal objectively unreasonable so as to warrant an assessment of fees and costs, however. Thus, that portion of Meyer's Motion will be denied.

**I.     Remand Is Required Because Meyer's Florida Whistleblower Claim Does Not Present A Federal Question Under *Grable & Sons***

### Federal Question Jurisdiction Under *Grable & Sons*

In *Grable & Sons*, the Supreme Court addressed the scope of federal removal jurisdiction where the parties are not diverse and the complaint does not plead a federal cause of action. The plaintiff had filed a quiet title action in state court, five years after the Internal Revenue Service ("IRS") seized and sold the plaintiff's real property to the defendant at a tax sale. *See*

*Grable & Sons*, 545 U.S. at 311. While no federal cause of action was stated, the plaintiff alleged the IRS had given deficient notice of seizure under federal law, 26 U.S.C. § 6335. *Id.* The defendant subsequently removed the case, asserting the existence of federal question jurisdiction because the plaintiff's claim of title depended on the interpretation of a federal tax statute. *Id.* The district court declined to remand, and the Sixth Circuit affirmed. *Id.* "On the jurisdictional question, the [Sixth Circuit] panel thought it sufficed that the title claim raised an issue of federal law that had to be resolved, and implicated a substantial federal interest (in construing federal tax law)." *Id.*

The question presented to the Supreme Court was "whether want of a federal cause of action to try claims of title to land obtained at a federal tax sale precludes removal to federal court of a state action with nondiverse parties raising a disputed issue of federal title law." *Id.* at 310. Justice Souter, writing for a unanimous Court, held that "the national interest in providing a federal forum for federal tax litigation is sufficiently substantial to support the exercise of federal-question jurisdiction over the disputed issue on removal, which would not distort any division of labor between the state and federal courts, provided or assumed by Congress." *Id.* Essential to this holding was the presence of a "substantial" disputed issue of federal law that, if decided in federal court, would not significantly alter the balance of judicial responsibilities between federal and state tribunals.

Thus, to determine if a state law cause of action qualifies for federal jurisdiction under *Grable & Sons*, the relevant inquiry is whether "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *See id.* at 314. While, in *Grable & Sons*, the Court hinted that this test would be met in only the rare state law case, just a year later it confirmed that only a "slim category" of cases would qualify for federal jurisdiction under the rule. *See Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006).

In *Empire HealthChoice Assurance, Inc. v. McVeigh*, the Court rejected the argument that an insurance plan's reimbursement claim, based on an insured's recovery of damages in a state court tort action, qualified for federal treatment under *Grable & Sons*. 547 U.S. at 699 ("[t]his case, we are satisfied, does not fit within [that] special and small category"). The Court stressed the importance of several factors dispositive of its finding of federal jurisdiction in *Grable & Sons* – factors that were not present in the latter case:

> This case is poles apart from *Grable*. The dispute there centered on the action of a federal agency (IRS) and its compatibility with a federal statute, the question qualified as "substantial," and its resolution was both dispositive of the case and would be controlling in numerous other cases. . . . *Grable* presented a nearly "pure issue of law," one "that could be settled once and for all and thereafter would govern numerous tax sale cases." In contrast, [the insurance plan's] reimbursement claim . . . is fact-bound and situation-specific.

*See id.* at 700-01 (citations omitted). Thus, key to the Court's finding of a "substantial" federal question in *Grable & Sons* was the involvement of a federal actor, the presence of a near "pure issue of law," the absence of context-specific factual issues surrounding the federal issue, and the case-dispositive nature of the federal matter presented.

The Court also emphasized that the exercise of federal jurisdiction must have a *de minimis* impact on the federal-state balance of judicial responsibilities. *See id.* at 701. In other words, it should not result in a dramatic spike in cases tried in the federal forum.

<u>Meyer's State Law Whistleblower Claim</u>

Meyer's Amended Complaint alleges a single state law claim for unlawful retaliation based upon his conduct in discovering, and threatening to expose, HMA's alleged violation of federal Medicare law. Upon consideration of the relevant factors, the Court concludes that "[t]his case is poles apart from *Grable*." *See id.* at 700. Meyer's claim under Florida's Whistleblower Act does not present any "substantial" disputed issue of federal law, it does not directly involve or implicate the actions of any federal player, it does not present a "nearly 'pure issue of [federal] law,'" and its resolution is quintessentially "fact-bound and situation-specific." *See id.* at 700-01.

*Actually Disputed Issue of Federal Law*

The Court concedes that the Amended Complaint appears to present an issue of federal law that is "actually disputed." *See Grable & Sons*, 545 U.S. at 312. Florida's Whistleblower Act requires the plaintiff to prove that he disclosed or threatened to disclose an ***actual*** violation of a law, rule, or regulation by his employer. *See, e.g.*, *Paulet v. Farlie, Turner & Co., LLC*, 2010 WL 2232662, at *2 (S.D. Fla. June 2, 2010) ("The FWA requires proof of an *actual* violation of federal law for an employee to prevail as a whistleblower."). Therefore, to prevail, Meyer will have to demonstrate that he was fired because he threatened to expose HMA's actual violations of Medicare law relating to improper inpatient admissions. Such a showing will require reference to federal statutes like 42 U.S.C. § 1320a-7b(a)(3), which mandates that

hospitals disclose known errors and omissions in their claims for Medicare reimbursement. Because HMA disputes that it violated any Medicare laws, there is an "actually disputed" issue of federal law here. *See Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1295 (11th Cir. 2008) (disputed issue of federal law where resolution of claims required determination of whether federal law had been broken).

HMA has not, however, carried its burden to establish that this disputed issue is "substantial." In *Grable & Sons*, the Supreme Court stressed that a federal forum is available only for "substantial questions of federal law." *See Grable & Sons*, 545 U.S. at 312. To this end, "[t]he Supreme Court has subsequently confirmed that a crucial factor supporting the result in *Grable* was the presence of a 'nearly pure issue of law.'" *Adventure Outdoors*, 552 F.3d at 1295. Indeed, in *Grable & Sons* the Court observed that "the meaning of the federal statute is actually in dispute," and that "it appears to be the only legal or factual issue contested in the case." *Grable & Sons*, 545 U.S. at 315. By contrast, the Court's subsequent decision in *Empire HealthChoice* involved issues that, while touching on federal law, were ultimately "fact-bound and situation-specific." *See Empire HealthChoice*, 547 U.S. at 700. Thus, "federal jurisdiction was inappropriate in the latter case." *Adventure Outdoors*, 552 F.3d at 1295.

HMA contends that substantiality is shown primarily because the Medicare laws are complicated and resolution of this case will require the Court to address issues of first impression in this Circuit. But Meyer's claim does not present any case-dispositive "nearly 'pure issue of law'" for resolution; rather, the substantiality of the dispute appears to center upon, and be bound up in, context-specific factual determinations going to HMA's knowledge, the sufficiency and timing of any Medicare disclosures, and whether its actions constituted fraud or not.

As the Eleventh Circuit noted in *Adventure Outdoors*, "[t]he Seventh Circuit recently emphasized this distinction between factual and legal issues," in *Bennett v. Southwest Airlines Co.*, 484 F.3d 907, 910 (7th Cir. 2007), when it found a state tort claim concerning an aviation accident presented "a fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of a federal law." *Adventure Outdoors*, 552 F.3d at 1299; *see also Singh v. Duane Morris LLP*, 538 F.3d 334, 339 (5th Cir. 2008) (no federal question jurisdiction where "federal issue [did not involve] resolution of an important question of law," but was "predominantly one of fact"). In finding an absence of substantiality in *Adventure Outdoors*, the Eleventh Circuit stated that,

> In our view, [the plaintiffs'] allegation of fraudulent inducement does not amount to an argument about the meaning of federal law. . . . If this case were to reach trial, resolution of the plaintiffs' claims ultimately would require an evaluation of this factual argument. To be sure, the jury would have to apply federal law to reach its decision. But as the Supreme Court explained in *Grable*, the federal courts have rejected the "expansive view that mere need to apply federal law in a state-law claim will suffice to open the 'arising under' door."

*Adventure Outdoors*, 552 F.3d at 1300 (quoting *Grable & Sons*, 545 U.S. at 313).

The Eleventh Circuit's analysis fits the bill here. In this case, HMA admits that "it found certain errors or omissions as to certain inpatient billing at the named subsidiary hospitals," though it denies "such billing involved any 'fraudulent' intent[.]" HMA's Resp. at 5. But whether HMA's conduct was fraudulent is a factual question, not a legal one. *See, e.g.*, *Witt v. La Gorce Country Club, Inc.*, 35 So. 3d 1033, 1040 (Fla. 3d DCA 2010); *Coastal Inv. Props., Ltd. v. Weber Holdings, LLC*, 930 So. 2d 833, 833 (Fla. 4th DCA 2006). And the same goes for the other issues HMA identifies as disputed – issues such as when a defendant would be deemed to have "knowledge" of errors or omissions and what would constitute sufficient timely "disclosure" of such errors. *See* HMA's Resp. at 8. These are all fact-bound matters; a "substantial" disputed issue of federal law they do not make. Further, as Meyer correctly argues, any determination of whether HMA violated the Medicare laws will inevitably involve detailed factual consideration, perhaps even on a patient by patient basis, of whether the admissions in question were properly done. This is not the sort of "nearly 'pure issue of law'" over which the Supreme Court has countenanced the exercise of federal jurisdiction.

In addition, "[t]wo other factors central to *Grable*'s substantiality analysis – the importance of the government's interest in the disputed federal tax provision and the ability of a federal agency to vindicate its action in federal court – weigh against finding a substantial federal question in this case." *Adventure Outdoors*, 552 F.3d at 1300. This case implicates no federal actor, such as a governmental agency. That alone serves to distinguish this matter from *Grable & Sons*, where "[t]he dispute . . . centered on the action of a federal agency (IRS) and its compatibility with a federal statute." *Empire HealthChoice*, 547 U.S. at 700; *see also Baptist Hosp. of Miami, Inc. v. Wellcare of Fla., Inc.*, 2011 WL 2084003, at *4 (S.D. Fla. May 23, 2011) ("the federal aspect of Medicaid law in this case does not present a substantial federal issue" because, in part, "[t]he case is between private parties and does not implicate the actions of any federal agency").

To be sure, "[t]he federal government unquestionably has a strong interest in uniformity and consistency of federal [Medicare] law." *See Empire HealthChoice*, 547 U.S. at 700. But HMA fails to establish any "serious federal interest in claiming the advantages thought to be inherent in a federal forum." *See Grable & Sons*, 545 U.S. at 313. To the contrary, the state courts' handling of cases such as this one, where the interpretation of federal Medicare law is but one part of the underlying lawsuit, will not meaningfully encroach upon the work of the federal courts in construing the Medicare statutes. Further, such determinations by the state courts "will not, in any event, result in any more inconsistency than that which a multimembered, multi-tiered federal judicial system already creates[.]" *See Tafflin v. Levitt*, 493 U.S. 455, 465 (1990).

"In *Empire HealthChoice*, the Court emphasized that the legal issue in *Grable* 'was both dispositive of the case and would be controlling in numerous other cases.'" *Adventure Outdoors*, 552 F.3d at 1301 (quoting *Empire HealthChoice*, 547 U.S. at 700). In contrast, the federal issue here will not necessarily dispose of this case. Even if HMA is found to have violated federal Medicare law, other issues will remain – such as whether Meyer's termination was causally linked to his discovery of, and his threats to disclose, HMA's violations to higher authorities.

Moreover, the interpretation of Medicare law in this lawsuit will not be controlling in numerous others because this case does not present "a context-free inquiry into the meaning of a federal law." *See Bennett*, 484 F.3d at 910. HMA speculates that this case will have "controlling impact on numerous other cases" due to "the impact Medicare laws and regulations have on health care providers (as well as beneficiaries) nationwide," *see* HMA's Resp. at 12, but it fails to deliver any support for this claim. In any event, HMA is mistaken because the federal courts are never bound by a state court's interpretation of federal law; such decisions lack precedential effect in the federal system. *See Adventure Outdoors*, 552 F.3d at 1301 ("the state court interpretation of the [federal] statutes will not be controlling in numerous other cases because it will not have precedential effect in the federal system"). Which is as it should be. To the extent there is some difficult issue of Medicare law wrapped up in this case, it ought not be decided, for all time, incidental to a state law retaliation claim. Its determination, with precedential effect, deserves to await presentation in a proper federal case where something approaching "a context-free inquiry" can be made. *See Bennett*, 484 F.3d at 910.

For all of these reasons, then, the disputed issues of federal law in this case clearly are not "substantial" within the meaning of *Grable & Sons*.

The authorities cited by HMA do not suggest otherwise. In the first place, the three decisions upon which it primarily relies are not from within this Circuit. This Court is bound to follow *Grable & Sons* as construed by the Eleventh Circuit in *Adventure Outdoors*, not some district court decision from another jurisdiction. *See Cuban Am. Bar Ass'n, Inc. v. Christopher*, 43 F.3d 1412, 1424 n.9 (11th Cir. 1995) ("While other circuit and district courts may have considered similar issues, it is the case law of this circuit which governs our decisions."); *Miller v. Astrue*, 2011 WL 1598731, at *10 (M.D. Fla. Apr. 28, 2011) ("Case law from other circuits and district courts are not binding on this Court.").

In any event, these decisions are distinguishable and, thus, not persuasive. This case is worlds apart from *New York City Health & Hospitals Corp. v. Wellcare of New York, Inc.*, 769 F. Supp. 2d 250, 256 (S.D.N.Y. 2011), where the district court found "[t]he eventual outcome of this litigation could potentially affect the hundreds of [managed health care organizations] that have contracted with [the Centers for Medicare & Medicaid Services, a division of the Department of Health and Human Services and the federal agency that administers the Medicare Advantage program]." Here, by contrast, there is no pure issue of law with potential far reaching ramifications beyond this case, and no federal player is involved.

The other two decisions cited by HMA, *Prince v. Berg*, 2011 WL 9103, at *3 (N.D. Cal. Jan. 3, 2011), and *Landers v. Morgan Asset Management, Inc.*, 2009 WL 962689, at *6 (W.D. Tenn. 2009), are similarly inapposite. In *Prince*, the district court denied remand because, in part, federal law did provide a pertinent private right of action. In addition, the district court found it significant that the plaintiff's state law claims depended upon whether there had been underlying violations of the False Claims Act, which served as the basis for a pending, related *qui tam* action. This case, unlike *Prince*, involves an area where Congress failed to create a private right of action, *see Rzayeva v. United States*, 492 F. Supp. 2d 60, 78 (D. Conn. 2007), and Meyer's claim is entirely independent of any pending *qui tam* matter.[2]

---

[2] HMA asserts "upon information and belief" that its alleged Medicare violations may also be the subject of a sealed *qui tam* proceeding or investigation, such that federal jurisdiction would lie under *Prince*. HMA's Resp. at 10-11. In support of this claim, however, HMA offers nothing beyond speculation – which is insufficient to meets its burden on removal. Moreover, as Meyer correctly notes, the state law claims in *Prince* were dependent upon whether there were any underlying False Claims Act violations, which were also the basis for the *qui tam* proceeding. Here, Meyer's retaliatory discharge claim is not premised on a violation of the False Claims Act, and his claim is unrelated to the federal government's interest in recouping damages for HMA's alleged fraudulent billing in any such proceeding.

*Landers* is not controlling because, again, it involved claims for which Congress had created federal private rights of action – claims involving the securities laws. In declining to remand, the district court focused upon the fact that the case raised the same theory as securities law claims pending in federal court and, thus, there would be a risk of inconsistent adjudications if the state action were remanded. Also, the district court found the federal dispute "substantial" in part because the outcome "could have extensive implications for the business practices of investment management companies that invested in mortgage-backed securities," beyond just the parties involved in the case. *Landers*, 2009 WL 962689, at *9. This is not that case; there is no worry of inconsistent adjudications here, and the outcome will not have far reaching implications beyond the parties to this case. Further, the Court declines to follow *Landers* because it has been criticized as inconsistent with *Grable & Sons* and *Empire HealthChoice*. *See Elec. Workers Pension Fund, Local 103 v. Weiss*, 2010 WL 597717, at *9 (N.D. Ohio Feb. 17, 2010).

### *Effect on State-Federal Division of Judicial Labor*

Even assuming the presence of a "stated federal issue, actually disputed and substantial," *see Grable & Sons*, 545 U.S. at 312, HMA's request for the exercise of federal jurisdiction flounders because it would work significant change upon the division of judicial labor in the state and federal systems. As the Supreme Court made clear in *Grable & Sons*, "even when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto," because "the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction." *Id.* at 313-14.

Here, that disruption would be too great. If this case were allowed into federal court, we might as well set out the welcome mat for any and every state law employment action premised upon a violation of some federal statute, rule, or regulation. *See, e.g.*, *Adventure Outdoors*, 552 F.3d at 1302 ("[B]y authorizing the exercise of federal jurisdiction here, we would open the doors of the federal courts in this circuit whenever a defamation defendant accuses a plaintiff of violating federal law."); *Paulet*, 2010 WL 2232662, at *5 ("The risk is substantial that allowing this case into federal court would open the doors of the federal courts in this Circuit to a plethora of state law employment cases that happen to involve federal issues. Any defendant in an FWA case could remove it simply by referencing a federal issue involved.").

This Court declines to put out the welcome mat. *Grable & Sons* makes plain that the mere presence of some "federal issue" should not operate as "a password opening federal courts to any state action embracing a point of federal law." *Grable & Sons*, 545 U.S. at 314; *see also Madzimoyo v. Bank of N.Y. Mellon Trust Co.*, 440 F. App'x 728, 730 (11th Cir. 2011) ("[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction, even where the interpretation of federal law may constitute an element of the state cause of action.") (citation omitted).

Finally, as to the division of judicial labor, the Court finds significant that other Florida Whistleblower Act cases, premised on the violation of federal law, have been adjudicated in the state courts of Florida. *See, e.g.*, *Diaz v. Impex of Doral, Inc.*, 7 So. 3d 591, 594-95 (Fla. 3d DCA 2009) (state law whistleblower claim premised on violation of federal OSHA regulation); *McBride v. Gemini Air Cargo, Inc.*, 915 So. 2d 187 (Fla. 3d DCA 2005) (Florida whistleblower claim based on federal regulatory violation reported to Federal Aviation Administration); *Underwood v. Rhone-Poulenc Rorer Pharms., Inc.*, 890 So. 2d 429, 430-31 (Fla. 4th DCA 2004) (state law whistleblower claim premised on violation of Federal Food, Drug, and Cosmetics Act); *Rice-Lamar v. City of Fort Lauderdale*, 853 So. 2d 1125 (Fla. 4th DCA 2003) (Florida whistleblower claim based on City's violation of various federal and state discrimination laws). Such cases properly belong in those courts, not these.

## II.     Meyer's Counsel Is Not Entitled To An Award Of Fees And Costs

Although remand is required, this Court will not award fees and costs to Meyer's counsel. The federal removal statute, 28 U.S.C. § 1447(c), provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The Supreme Court has said that "awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005).

Thus, there is no presumption for or against fees, and the decision to award them is left to the Court's sound discretion. *See id.* at 139. "Discretion is not whim," however. *See id.* Indeed, "[t]he fact that an award of fees under § 1447(c) is left to the district court's discretion, with no heavy congressional thumb on either side of the scales, does not mean that no legal

standard governs that discretion." *Id.* The appropriate test is whether, in the Court's good judgment, "the removing party lacked an objectively reasonable basis for seeking removal." *See id.* at 141; *Rae v. Perry*, 392 F. App'x 753, 755 (11th Cir. 2010). "[T]he award of attorney's fees under § 1447(c) was not intended to be routine, and is still a matter for the district court's discretion on a case-by-case basis." *Casciani v. La Cruise, Inc.*, 1998 WL 34185289, at *5 (M.D. Fla. June 24, 1998).

Although this removal was not ultimately successful, the Court is unable to conclude that HMA lacked an objectively reasonable basis for its attempt. "Removal is not objectively unreasonable simply because the removing party's arguments lack merit and the removal is ultimately unsuccessful." *Lewis v. Tulalip Hous. Ltd. P'ship No. 3*, 2011 WL 6140881, at *4 (W.D. Wash. Dec. 9, 2011). This case does involve some aspect of federal law and the arguments in favor of removal jurisdiction, while not persuasive in the end, appear to have been made in good faith, on the basis of the particular facts and circumstances at issue. *See, e.g., Baptist Hosp. of Miami*, 2011 WL 2084003, at *6 (no fee award where removal under *Grable & Sons* was not objectively unreasonable); *Fla. Dep't of Fin. Servs. v. Universal Health Care Ins.*, 2008 WL 268802, at *1 (N.D. Fla. Jan. 30, 2008) (same).

## CONCLUSION

For the reasons explained above, it is hereby **ORDERED and ADJUDGED** as follows:

1. Plaintiff Paul Meyer's Motion for Remand and Request for Award of Attorney's Fees and Costs [ECF No. 7] is hereby **GRANTED IN PART**. This case shall be **REMANDED** to state court, however Meyer's counsel is not entitled to an award of fees and costs.

2. In light of remand, all pending motions [ECF Nos. 9, 14, 26] are hereby **DENIED** for want of jurisdiction.

3. The Clerk is directed to **CLOSE** this case and shall take all necessary steps to ensure the prompt remand of this matter and the transfer of this file back to the Circuit Court for the Seventeenth Judicial Circuit in and for Broward County, Florida.

**DONE and ORDERED** in chambers at Miami, Florida on January 20, 2012.

_____
 **ROBERT N. SCOLA, JR.**
 **UNITED STATES DISTRICT JUDGE**

Copies to: *Counsel of record*